IT IS HEREBY ADJUDGED and
DECREED this is SO ORDERED.

*The party obtaining this order is responsible for noticing it pursuant to Local Rule 9022-1.*

Dated: June 23, 2011



*Randolph J. Haines*

**Randolph J. Haines, Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| MORTGAGES LTD., | CASE NO. 2:08-bk-07465-RJH |
| Debtor. | |
| ML LIQUIDATING TRUST, | |
| Plaintiff, | ADVERSARY NO. 2:11-ap-00725 |
| v. | |
| MAYER HOFFMAN McCANN P.C., a professional corporation; CBIZ, INC., a corporation; and CBIZ MHM, LLC, a limited liability company, | OPINION AND ORDER DENYING MOTION TO REMAND |
| Defendants. | |

This motion to remand raises essentially three questions: (1) what is the citizenship of a post-confirmation liquidating trust for purposes of diversity jurisdiction; (2) is litigation vested in a post-confirmation liquidating trust sufficiently "related to" the bankruptcy case for bankruptcy jurisdiction; and (3) may a bankruptcy court remand "on any equitable ground" if diversity jurisdiction also exists? The Court concludes that both diversity jurisdiction and bankruptcy jurisdiction exist, and that remand on equitable grounds is not permissible.

**Background Facts**

Mortgages Ltd. was one of the oldest hard money lenders in Arizona. At least in recent years, almost all the money lent was raised form local private investors. Mortgages Ltd. continued making development and construction loans, or at least loan commitments, even after the credit and real estate markets collapse of 2006. Ultimately, however, in the summer of 2008

the president (the son of the founder) committed suicide and its bankruptcy case followed shortly thereafter.

In the summer of 2009, the official committee of investors confirmed a liquidating plan of reorganization. That First Amended Plan of Reorganization created a liquidating trust and vested in it all of the Debtor's non-loan assets, specifically including all of the Debtor's causes of action and avoidance actions (other than actions seeking collection on promissory notes and loans).[1] The Debtor continued to exist as a Reorganized Debtor, so that it could continue to function as the loan servicer for the outstanding loans. However, the ownership of the Reorganized Debtor was entirely vested in the liquidating trust, and the Reorganized Debtor entered into a sub-servicing agreement with ML Manager LLC to service the outstanding loans on behalf of the Loan LLCs.

A little over a year later, the liquidating trust filed suit in state court against the Debtor's former accountants and auditors asserting various claims of accounting malpractice and negligent misrepresentation. The complaint asserted that Defendants had issued audits in 2005, 2006 and 2007 that were materially false and misleading, that were not prepared in conformity with generally accepted accounting principles, that concealed the Debtor's true financial condition and that artificially prolonged its existence and deepened its insolvency.

The Defendants removed the complaint to federal District Court, asserting both diversity jurisdiction[2] and bankruptcy jurisdiction.[3] Immediately after removal, the defendants also moved in the District Court to have the case referred to Bankruptcy Court under the District

---

[1] Because most of the Debtor's loans had been funded by direct investments made by investors, and many of those were "pass through" investments that purported to give the investor a direct interest in the loan and its proceeds and collateral, each of the outstanding loans was separately vested in a Loan LLC, the members of which were the investors in that loan. The plan also created ML Manager LLC to be the manager of each of the Loan LLCs.

[2] 28 U.S.C. § 1331.

[3] 28 U.S.C. § 1334(b).

Case 2:11-ap-00725-EPB    Doc 25    Filed 06/23/11    Entered 06/24/11 13:00:37    Desc
Main Document - Minute Entry    Page 2 of 19

Court's General Referral Order and Local Bankruptcy Rule 5011-1.[4]

In November, Defendants filed a motion to dismiss the complaint and filed a motion to remand the matter to state court. Visiting District Judge Ralph Beistline granted the motion to refer the case to this Bankruptcy Court, without ruling on either the pending motion for remand or the motion to dismiss. The Plaintiff Liquidating Trust then obtained a hearing in this Court on its pending motion to remand. After oral argument, the Court took the motion under advisement.

**Diversity Jurisdiction Exists, Based on the Trustee's Citizenship**

Defendants contend that complete diversity exists because they are citizens of Kansas (Mayer Hoffman) and Ohio (CBIZ and CBIZ MHM), while citizenship of the Plaintiff Liquidating Trust is Georgia, based on the citizenship of its Trustee, Kevin O'Halloran. The Plaintiff Liquidating Trust, however, contends that complete diversity is lacking because a trust takes the citizenship of both its trustee and all of its beneficiaries, and that one of the investor beneficiaries is an Ohio resident, the same as Defendant CBIZ.

In *Johnson*,[5] the Ninth Circuit held: "A trust has the citizenship of its trustee or trustees." That holding was necessary to the result – that diversity jurisdiction existed – because one of the (indirect) members of a defendant LLC was a trust.

As support for its conclusion that a trust has the citizenship of its trustee, the Ninth Circuit provided a *"see"* citation to the Supreme Court holding in *Navarro*.[6] In *Navarro*, the issue was whether diversity jurisdiction existed over a suit brought by a trustee of a business trust, when one of the beneficiaries of that business trust had the same citizenship as the defendant. The defendant argued that the real estate investment business trust, although in form an express trust, was essentially an unincorporated association. The opinion in *Navarro*

---

[4] Local Bankruptcy Rule 5011-1 provides: "Pursuant to 28 U.S.C. § 157(a), the district court refers to the bankruptcy court for this District all cases under Title 11 and all proceedings under Title 11 or arising in or related to a case under Title 11." Bankr. Ariz. R. 5011-1.

[5] *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

[6] Id., citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980).

therefore framed the question: "Fidelity is an express trust, and the question is whether its trustees are real parties to this controversy for purposes of a federal court's diversity jurisdiction."[7] In answering that question, the *Navarro* opinion noted that as early as 1808 trustees of an express trust were entitled to bring diversity actions in their own names and based on their own citizenship.[8] It also noted that in 1870, the court had held that jurisdiction based upon the citizenship of individual trustees "is not defeated by the fact that the parties whom they represent may be disqualified. [Citation omitted] '[T]he residents of those who may have the equitable interest' is simply irrelevant."[9] Finally, the court also cited *Bullard*, holding that the result would not differ when the trust beneficiaries were numerous and widely scattered, so long as the trustee had legal title to trust assets and had the customary authority to hold, manage and dispose of assets for the benefit of others.[10] In such cases, "[t]he beneficiaries were not necessary parties and their citizenship was immaterial."[11]

Thus so long as the trustee's powers are both customary and real and substantial, there is no allegation of sham or collusion and the trustees are not "mere conduits," then "they are real parties to the controversy," which may be maintained in diversity jurisdiction "without regard to the citizenship of the trust beneficiaries."[12]

Plaintiffs nonetheless argue, in effect, that the clear holding in *Navarro* was subsequently overruled by Justice Scalia's five-four majority opinion in *Carden*.[13] *Carden* addressed the question whether the citizenship of the limited partners must be taken into consideration in determining the existence of diversity jurisdiction when a party is a limited

---

[7] *Navarro*, 446 U.S. at 462.

[8] *Id.*, citing *Chappedelaine v. Dechenaux*, 8 U.S. (4 Cranch) 306, 308 (1808).

[9] *Navarro*, 446 U.S. at 463, citing *Bonnafee v. Williams*, 44 U.S. (3 How.) 575, 577 (1845).

[10] *Navarro*, 446 U.S. at 463-64, citing *Bullard v. Cisco*, 290 U.S. 179, 189 (1933).

[11] *Bullard*, 290 U.S. at 190.

[12] *Navarro*, 446 U.S. at 465-66.

[13] *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990).

4

partnership. Because that was the only issue in that case, necessarily anything it might have had to say about diversity jurisdiction involving trusts would be at best *dictum*. In the course of deciding that the citizenship of limited partners must be considered, Justice Scalia's opinion made the general observation that a corporation is the only artificial entity that has its own citizenship, and that for all other artificial entities the citizenship of the members must also be considered. In the course of rejecting the plaintiff's argument that there was more than one exception to that general principle, because *Navarro* held that a trust had the citizenship of its trustee, Justice Scalia explained that *Navarro* did not hold that "the trust had attributes making it a 'citizen.'"[14] Instead of holding that a trust has any citizenship, Justice Scalia explained, *Navarro* simply applied the rule "more than 150 years old," that "a trustee is a real party to the controversy," so his citizenship is determinative.

To argue that *dictum* has some implication for diversity jurisdiction in cases involving trusts, plaintiff seizes on the fact that the suit in *Navarro* was brought in the name of the trustees, rather than in the name of the trust itself. But nothing in either *Navarro* or *Carden* suggests the name of the plaintiff is controlling. The issue underlying *Navarro*, and why the Supreme Court granted *certiorari*, was whether a business trust, or a real estate investment trust, should be treated for diversity purposes as a trust or instead as an unincorporated association. The Fifth Circuit concluded it should be treated as a trust, and that citizenship for purposes of diversity jurisdiction should be that of the real parties in interest, which for a trust is the trustees.[15] The Third[16] and Fourth Circuits,[17] and Justice Blackmun's lone dissent in *Navarro*,[18]

---

[14] 494 U.S. at 191.

[15] *Lee v. Navarro Sav. Ass'n*, 597 F.2d 421 (5th Cir. 1979), *aff'd*, 446 U.S. 458 (1980).

[16] *Riverside Mem'l Mausoleum Inc. v. UMET Trust*, 581 F.2d 62 (3d Cir. 1978) (real estate investment trusts are treated like unincorporated associations instead of as trusts).

[17] *Belle View Apartments v. Realty ReFund Trust*, 602 F.2d 668 (4th Cir. 1979).

[18] *Navarro*, 446 U.S. at 466, 476 n.7 ("It seems preferable to me to treat Fidelity as a form of unincorporated business association, and determine its citizenship according to the real-party-in-interest test utilized by the Court of Appeals.")

5

instead concluded that business trusts should be regarded not as trusts but instead as unincorporated associations, for which the real parties in interest are the members so their citizenship should be controlling for diversity purposes. Those conclusions generally relied on the Supreme Court's holding in *Morrissey*[19] that business trusts should be *taxed* as unincorporated associations instead of as trusts, an analysis that *Navarro* expressly held to be irrelevant.[20] But none of those opinions ever suggested that if it were regarded as a trust, instead of a business association, the real parties in interest might be the beneficiaries of the trust, whose citizenship should control. Instead, all of the opinions were in agreement with the 150-year-old rule that the trustee is the real party in interest, whose citizenship is controlling. They recognized that if the REITs were treated as trusts, "[t]he result, of course, would be to treat a REIT as a citizen of every state in which a *trustee* is a citizen."[21]

Justice Scalia's *dictum* in *Carden* therefore did not suggest a new rule for diversity jurisdiction regarding trusts. It merely recognized that *Navarro* relied on the citizenship of the real party in interest – the trustee – rather than to decide that the trust itself is a "citizen" for purposes of diversity jurisdiction. And it is entirely consistent with the long-standing rules that the citizenship of the real party in interest is determinative for diversity purposes, and that for trusts the real party in interest is the trustee.

There is thus nothing to suggest that the holdings of *Navarro* and *Bullard*, or even the *dictum* of *Carden,* would dictate a different outcome when the trust itself is the named party, as it is here, rather than the trustee in his capacity as trustee for the trust. The fact that the trust itself is the named party does not change the 150 years of Supreme Court jurisprudence concluding that for real, express trusts, the trustee rather than the beneficiaries is the real party in

---

[19] *Morrissey v. Comm'r*, 296 U.S. 344 (1935).

[20] *Navarro*, 446 U.S. at 465 n.15 ("That business trusts may be treated as associations under the Internal Revenue Code [citation omitted] is simply irrelevant.").

[21] *Riverside Mem'l Mausoleum, Inc. v. UMET Trust*, 434 F. Supp. 58, 60 (E.D. Pa. 1977), *rev'd on other grounds,* 581 F.2d 62 (3d Cir. 1978) (emphasis added) (citing *Bullard*, 290 U.S. 179 (1933)).

Case 2:11-ap-00725-EPB   Doc 25   Filed 06/23/11   Entered 06/24/11 13:00:37   Desc
Main Document - Minute Entry    Page 6 of 19

interest, on whose citizenship the existence of diversity jurisdiction must be found.[22] And nothing has changed the Supreme Court's recognition[23] that except for labor unions, F.R.Civ.P. Rule 17(a)[24] generally identifies the real parties in interest whose citizenship is controlling for diversity purposes, which includes "a trustee of an express trust."

And after *Navarro,* Judge Posner of the Seventh Circuit noted what was by then a settled issue even as to real estate investment trusts, that "The citizenship of a trust is determined for purposes of diversity jurisdiction by the citizenship of the trustee . . . ."[25] And after *Carden*, the Second,[26] Fifth,[27] Sixth[28] and Seventh[29] Circuits have held that *Navarro* is still good law and that the trustee's citizenship is determinative for diversity jurisdiction involving a trust.

It is true that at least one district court in the Ninth Circuit has concluded in an unpublished opinion that *Bullard, Navarro*, and *Johnson* are not controlling with respect to

---

[22] See, *e.g.*, *Carden*, 494 U.S. at 191-92 (*Navarro* turned on the determination "whether a trustee is the real party to the controversy"); *Carden*, 494 U.S. at 198 (diversity jurisdiction depends on the citizenship of the "real parties to the controversy, *i.e.*, which parties have control over the subject of and litigation over the controversy," citing *Marshall v. Baltimore & Ohio R.R.. Co.*, 57 U.S. (16 How.) 314, 328 (1853)) (O'Connor, J. dissenting).

[23] *Navarro*, 446 U.S. at 463 n.9 ("There is a 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy.").

[24] Federal Rule of Civil Procedure 17(a) provides, in pertinent part: "An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought: . . . (E) a trustee of an express trust . . . ." Fed. R. Civ. P. 17(a).

[25] *Goldstick v. ICM Realty*, 788 F.2d 456, 458 (7th Cir. 1986) (a real estate investment trust is a trust whose citizenship is that of the trustees).

[26] *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998).

[27] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 n.6 (5th Cir. 2009) ("[C]itizenship of a trust is that of its trustee.").

[28] *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 F.App'x 731, 732 (6th Cir. 2002) ("[A] business trust has the citizenship of its trustees.").

[29] *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 901 (7th Cir. 2010) ("[A] trust's citizenship is that of the trustee, rather than the beneficiaries, for the purpose of 28 U.S.C. § 1332(a)."). *Accord, Ryan Int'l Airlines, Inc. V. East Trust Sub-2*, 2011 WL 89304, * 31 (N.D. Ill. March 14, 2011).

7

diversity jurisdiction over real estate investment trusts, and in that context stated that the citizenship of a real estate investment trust is both that of the trustee and all of the beneficiaries.[30] Frankly, that is simply a misreading of *Navarro* and also of Justice Scalia's *Carden dictum*, which did not even purport to reverse or even "narrow" *Navarro*. And it is also true that the Third Circuit has reverted to its "dual trustee-beneficiary rule" after concluding that neither *Navarro* nor *Carden* had reversed its earlier holding in *Riverside*, based somewhat on who is the named party.[31] And the Eleventh Circuit concluded that *Carden* means that citizenship of a Massachusetts business trust is that of each of its shareholders.[32]

But because the Plaintiff in this case is not a real estate investment trust, neither that District Court unpublished opinion[33] nor the Third Circuit opinion is either controlling precedent or convincing. Moreover, this Court remains bound by *Johnson'*s precedent that "a trust has the citizenship of its trustee or trustees."[34] This Court is not free to conclude that *Johnson* is not binding precedent even if it misunderstood *Navarro'*s holding or *Carden* 's dictum. And such alleged misunderstanding of *Carden*'s dictum is unlikely given *Johnson*'s reliance on *Carden*'s holding with respect to limited partnerships.[35]

Because *Bullard, Navarro*, and *Johnson* are all controlling precedents, and because Plaintiff here is an express trust that is not a real estate investment trust, the Court must conclude

---

[30] *PDP La Mesa LLC v. LaSalle Med. Office Fund II*, 2010 WL 3988598, * 3 (S.D. Cal. Oct. 12, 2010) (unpublished).

[31] *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 203 (3d. Cir. 2007). But the Third Circuit also recognized this is not the law of the Ninth Circuit. *Id.* at 201-02 ("In contrast to *Navarro*, in the above cases, as well as in this case, the question is what is the citizenship of an entity when the entity itself is a party to the action") & 201 n.13 ("In . . . *Johnson [v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 896-97 (9th Cir. 2006)] trusts were among the owners of the entities involved . . . .").

[32] *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1339 (11th Cir. 2002).

[33] Even if it had been a published opinion, bankruptcy courts are not bound by district court decisions from another district. *In re Silverman*, 616 F.3d 1001, 10051 (9th Cir. 2010).

[34] *Johnson*, 437 F.3d at 899.

[35] *Id*.

that for purposes of diversity jurisdiction the citizenship of the real party in interest, the trustee, is controlling. Therefore the motion to remand on the ground that Defendants failed to demonstrate the existence of diversity jurisdiction must be denied.

### "Related to" Bankruptcy Jurisdiction Exists

Plaintiff Liquidating Trust argues that the case must be remanded because bankruptcy "related to" jurisdiction[36] is lacking. Although the Court's finding of the existence of diversity jurisdiction is dispositive, the Court will nonetheless address the existence of bankruptcy jurisdiction, in the alternative, in the event an appellate court finds diversity jurisdiction to be lacking.

Plaintiff primarily relies on the "close nexus" test for post-confirmation jurisdiction that the Ninth Circuit adopted in *Pegasus Gold*,[37] following the Third Circuit's analysis in *Resorts International*.[38]

The claims at issue here are pre-petition claims that were owned by the Debtor, which upon the filing of the bankruptcy case became property of the estate pursuant to Bankruptcy Code § 541.[39] There can be no debate that bankruptcy jurisdiction existed over these claims had they been brought by the Debtor in Possession before confirmation of a plan. The creation of such bankruptcy jurisdiction was one of the major changes to bankruptcy litigation that Congress adopted when it adopted the Bankruptcy Code in 1978, ending the long-standing

---

[36] 28 U.S.C. § 1334(a) vests federal district courts with "original and exclusive" jurisdiction over all bankruptcy "cases," and then § 1334(b) also vests in the district courts original but not exclusive "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

[37] *Montana v. Goldin (In re Pegasus Gold)*, 394 F.3d 1189, 1194 (9th Cir. 2005).

[38] *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l)*, 372 F.3d 154, 167 (3d Cir. 2004).

[39] 11 U.S.C. § 541(a) provides that the filing of a bankruptcy case "creates an estate" and, subject to some exceptions not applicable here, vests in that estate "all legal or equitable interests of the debtor in property as of the commencement of the case." The Bankruptcy Code is found in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532. The jurisdictional provisions for bankruptcy matters, however, are not found in the Bankruptcy Code itself, but instead are in Title 28 of the United States Code.

jurisdictional limit that required trustees and debtors in possession to pursue "plenary" actions in some other court and on the basis of some jurisdiction other than bankruptcy jurisdiction.[40] The Supreme Court has recognized that "Included within the bankruptcy courts' jurisdiction are . . . causes of action owned by the debtor at the time of the petition for bankruptcy. The bankruptcy courts can hear claims based on state law as well as those based on federal law."[41] And the language of the jurisdictional statute that vested this broad jurisdiction in bankruptcy courts was all civil proceedings "related to" the bankruptcy case.[42]

Congress reiterated that same expanded bankruptcy jurisdiction when it responded to the Supreme Court's holding that, in some circumstances, the bankruptcy jurisdiction must be exercised by an Article III Judge.[43] The 1984 amendments merely changed, in some circumstances, which federal judge could exercise the bankruptcy jurisdiction,[44] but left unchanged the nature and scope of the bankruptcy jurisdiction that could be exercised somewhere in the federal courts.

That original jurisdictional grant, then in 28 U.S.C. § 1471(b), created the now-familiar three prongs of bankruptcy jurisdiction in addition to jurisdiction over the bankruptcy case itself, by vesting in District Courts "original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11."

---

[40] "The 1978 Act made two fundamental changes in the jurisdictional system for handling bankruptcy cases and proceedings established under the 1898 Act. First, it created a separate bankruptcy court that was independent of the district court . . . . Second, the subject-matter jurisdiction of the separate bankruptcy court, as established in 1978 by former 28 U.S.C.A. § 1471, was not limited to traditional bankruptcy functions or, as before, the narrow scope of 'summary' jurisdiction under the 1898 Act based upon actual or constructive possession of property or consent of the parties. Instead, . . . Congress intended broadly to confer subject-matter jurisdiction on the 1978 bankruptcy court to the extent necessary for it 'to handle everything that arises in a bankruptcy case.'" 1 HON. WILLIAM L. NORTON, JR. AND WILLIAM L. NORTON, III, NORTON BANKRUPTCY LAW AND PRACTICE § 4:8, at 4-34-35 (3d ed. 2008) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 445 (1977)).

[41] *N. Pipeline Const. v. Marathon Pipe Line Co.*, 458 U.S. 50, 54 (1982).

[42] NORTON, *supra,* at 4-34 - 4-36.

[43] *Id*.

[44] *See* 28 U.S.C. § 157

10

Nor is there any dispute that the latter two prongs, "arising in or related to cases under Title 11," were intended to create plenary bankruptcy jurisdiction to handle "virtually any dispute with a debtor."[45]

Because it is undisputed that bankruptcy jurisdiction would have existed over these claims if brought by the Debtor in Possession pre-confirmation, the issue is whether such jurisdiction is lost either because a plan has been confirmed or because it vests the cause of action in a successor liquidating trustee for the benefit of the estate.

Certainly nothing in the language of the jurisdictional statute signals that there should be any such change.[46] This is because, as the Ninth Circuit has noted, the defining term "related to" designates a "'common nucleus of operative facts' [that] would ordinarily be expected to be resolved in one judicial proceeding."[47] Obviously the existence of "a common nucleus of operative facts" does not change simply because a plan has been confirmed or the litigation is pursued by a successor liquidating trustee for the benefit of the same parties, the creditors.

The Ninth Circuit has held that "post-confirmation bankruptcy court jurisdiction is necessarily more limited than pre-confirmation jurisdiction, and that the *Pacor* formulation may be somewhat over broad in the post-confirmation context."[48] Of course the New GM should not have a lifetime privilege of bankruptcy jurisdiction for its post-confirmation business disputes for the benefit of its post-confirmation equity holders. But that would not require any different "test" for jurisdiction, because such disputes would not arise from a common nucleus of operative fact as did the bankruptcy case. Nevertheless, to signal the more careful scrutiny that

---

[45] NORTON, *supra* § 4:24, at 4-87.

[46] *McKinstry v. Sergent*, 442 B.R. 567, 575 (E.D. Ky. 2011) ("The bankruptcy jurisdictional statute makes no distinction between pre- and post-confirmation jurisdiction, *In re Boston Reg'l* [*Med. Ctr., Inc.*], 410 F.3d [100,] 106 [(1st Cir. 2005)] ('On its face, section 1334 does not distinguish between pre-confirmation and post-confirmation jurisdiction.')").

[47] *Pegasus Gold*, 394 F.3d at 1195, quoting *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

[48] *Pegasus Gold*, 394 F.3d at 1194.

11

should apply to post-confirmation jurisdiction the Ninth Circuit adopted a different gloss to summarize it: a "'close nexus' test for post-confirmation 'related to' jurisdiction, because it recognizes the limited nature of post-confirmation jurisdiction but retains a certain flexibility, which can be especially important in cases with continuing trusts."[49] Although it did not define exactly how the "close nexus" must be "more limited" than "related to," the Ninth Circuit's reference to a Third Circuit case adopting similar language suggests that the requisite "close nexus" typically does exist over "matters affecting 'the interpretation, implementation, consummation, execution, or administration of the confirmed plan.'"[50]

Both that gloss and the holding of *Pegasus Gold* necessarily mean that jurisdiction exists here. This case concerns Debtor causes of action that the plan specifically created the Liquidating Trust to pursue for the benefit of the creditors of the estate. This litigation is therefore the part and parcel of the "consummation, execution, [and] administration of the confirmed plan." And the facts here are virtually identical to those in *Pegasus Gold*, because this Liquidating Trust is akin to RSC in that case, and the Ninth Circuit concluded such litigation "could affect the implementation and execution of the Plan itself, which specifically called for the creation of RSC."[51] Indeed, the litigation here is an even more direct implementation and execution of this plan, because the Liquidating Trust was specifically created to pursue precisely this litigation, whereas the plan-created entity RSC in *Pegasus Gold* was created to perform some debtor functions, but not specifically to pursue litigation, which was not contemplated.

Regardless of its terminology and its reliance on a Third Circuit case, the *holding* of *Pegasus Gold* is the controlling precedent here. If "related to" jurisdiction exists for litigation by a plan-created successor to the debtor that was neither a debtor cause of action nor contemplated at the time of confirmation and specifically vested in the successor, it necessarily must exist when the successor is a liquidating trust pursuing debtor causes of action for the

---

[49] *Id*.

[50] *Id*., quoting *Resorts Int'l.*, 372 F.3d at 167.

[51] *Pegasus*, 394 F.3d 1194.

12

benefit of the estate.

Nor is the Third Circuit's decision in *Resorts International* to the contrary. Although that case involved a liquidating trust created by the plan, the litigation at issue was not a debtor cause of action that the plan vested in the liquidating trust, nor indeed was it any litigation that was even contemplated at the time of plan confirmation. Instead, the accounting malpractice claim there was "for professional malpractice and breach of contract in connection with accounting services performed for the Liquidating Trust," which the plan of reorganization had created "for the benefit of certain creditors."[52] Thus *Resorts International* did not concern Debtor causes of action that the plan specifically vested in the liquidating trust for the benefit of the estate.

Plaintiffs have provided neither argument nor precedent to suggest that the "narrowing" of post-confirmation jurisdiction would preclude a liquidating trust, created by a plan, from pursuing debtor causes of action for the benefit of the creditors. And the First Circuit's analysis in *Boston Regional Medical Center*[53] is both convincing and consistent with all Ninth Circuit precedent, including *Pegasus Gold* and *Ray*.[54] *Boston Regional* concluded that the "narrowing interpretations" of post-confirmation jurisdiction had been "invoked only with respect to actions involving reorganized debtors that have reentered the marketplace," not to plan-created liquidating trusts pursuing debtor causes of action vested in them by the plan.[55] By contrast to such reorganized debtors that reenter the marketplace, "a liquidating debtor exists for the singular purpose of executing an order of the bankruptcy court. Any litigation involving

---

[52] *Resorts Int'l*, 372 F.3d at 157.

[53] *Boston Reg'l Med. Ctr. v. Reynolds (In re Boston Reg'l Med, Ctr.), Inc.*, 410 F.3d 100, 105-07 (1st Cir. 2005).

[54] *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124 (9th Cir. 2010). Although *Ray* contains some discussion of the scope of post-confirmation jurisdiction, it is not on point because it did not involve a liquidating trust pursuing a debtor cause of action, but instead involved litigation between parties neither of which was a successor to the debtor in possession.

[55] *Boston Reg'l Med. Ctr.*, 410 F.3d at 106.

13

such a debtor thus relates much more directly to a proceeding under title 11."[56] Finally, it noted that for a liquidating plan, there is a strong policy interest supporting adherence to the general rule governing "related to" jurisdiction – the "strong federal policy in favor of expeditious liquidation of debtor corporations and the prompt distribution of available assets to creditors."[57] The First Circuit noted that the Ninth Circuit particularly recognizes this strong federal policy.[58] And of course that is the same strong federal policy that underlay the dramatic expansion of bankruptcy jurisdiction in 1978 and that was again insisted upon by Congress when it maintained the same jurisdictional structure after *Marathon*.

And the recent analysis by the Kentucky District Court is just as compelling: "The trust is asserting claims that do not belong to it personally but were transferred to it as part of the bankruptcy plan – and so 'the "implementation" and "execution" of the confirmed plan are directly at issue.' [citation omitted] Put another way, this trust is litigating on behalf of unsecured creditors, and so 'the implementation of the payment of unsecured creditors . . . is precisely at issue, and falls squarely in the realm of limited jurisdiction that a bankruptcy court may hear.' [citation omitted] No matter how you slice it, then, this matter is 'related to' a case arising under Title 11."[59]

Because the scope of "related to" bankruptcy jurisdiction should not change when a plan-created liquidating trust pursues a debtor cause of action, and because *Pegasus Gold* is controlling in any event, the Court must conclude that "related to" bankruptcy jurisdiction exists here. Therefore the motion to remand on the basis that such jurisdiction is lacking must be denied.

---

[56] *Id.* at 107.

[57] *Id.*

[58] *Id.*, citing *Kira v. Holiday Mart, Inc. (In re Holiday Mart, Inc.),* 715 F.2d 430, 435 (9th Cir. 1983).

[59] *McKinstry*, 442 B.R. 567 (E.D. Ky. 2011), quoting from *Kirschner v. Grant Thornton, LLP (In re Refco, Inc. Sec. Litig.)*, 628 F. Supp. 2d 432, 443 (S.D.N.Y. 2008) and *Guttman v. Martin (In re Railworks Corp.)*, 325 B.R. 709, 723 (Bankr. D. Md. 2009).

**Equitable Remand Does Not Apply to Diversity Jurisdiction**

Because removal was also claimed on grounds of bankruptcy jurisdiction pursuant to 28 U.S.C. § 1452(a),[60] the Plaintiff Liquidating Trust also seeks remand on equitable grounds pursuant to § 1452(b).[61] The Trust argues that this equitable remand power exists even if diversity jurisdiction exists, despite the fact that § 1452(b) does not by its terms apply to removal under § 1441.

The Trust cites two authorities for its conclusion that equitable bankruptcy remand can apply to diversity cases. First, it cites the statement of the Ninth Circuit BAP in *McCarthy*[62] that the equitable bankruptcy remand power "subsumes and reaches beyond all of the reasons for remand under non-bankruptcy removal statutes." Second, it relies on the statement of the Ninth Circuit BAP in *Cedar Funding*[63] that the existence of a non-bankruptcy "jurisdictional basis" is only one of fourteen factors that may be considered for discretionary remand.[64]

The plain language of the equitable remand statute clearly applies only to claims that have been removed on account of bankruptcy jurisdiction. This is because § 1452(b) authorizes the discretionary remand of "such" claim or cause of action. "Such" must refer to the claim or cause of action identified in § 1452(a), which is limited to a claim or cause of action over which the District Court has jurisdiction "under section 1334 of this title," which is necessarily limited to "civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 1452(b) therefore does not, at least by its own express terms, authorize the equitable remand of claims that were removed on the basis of diversity jurisdiction, pursuant

---

[60] 28 U.S.C. § 1452(a) provides in pertinent part: "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 [bankruptcy jurisdiction] of this title."

[61] 28 U.S.C. § 1452(b) provides, in pertinent part: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground . . . ."

[62] *McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 417 (9th Cir. BAP 1999).

[63] *Nilsen v. Nilsen (In re Cedar Funding, Inc.)*, 419 B.R. 807 (9th Cir. BAP 2009).

[64] *Id*, at 820, n. 18.

15

to 28 U.S.C. § 1441.

The question this conclusion leaves, however, is whether the equitable remand power is applicable to claims that were removed under *both* bankruptcy jurisdiction and diversity jurisdiction. The plain language of § 1452(b) could be read to mean that as long as bankruptcy jurisdiction was *a* basis for removal, then the discretionary remand power is available regardless of whether there exists another basis for removal.

This remaining questions appears to be answered by § 1441 and cases applying it. When a cause of action has been removed on the basis of federal question or diversity jurisdiction § 1441 clearly does not authorize the District Court to remand it "on any equitable ground." Rather, § 1441 provides for discretionary remand only of predominately state law claims that have been removed along with a federal question claim. Thus even if the state law claims predominate all of the claims in such a removed action, the District Court is not given discretion to remand the federal question claims. Similarly, there is no authority to remand cases for which diversity jurisdiction exists, almost all of which are undoubtedly dominated by state law claims.

The answer is unequivocally provided by the Supreme Court's holding in *Thermtron*.[65] In *Thermtron*, a case properly removed under diversity jurisdiction had been remanded by the District Court solely on the basis of the District Court's crowded docket. The Supreme Court held: "The District Court exceeded its authority in remanding on grounds not permitted by the controlling statute," which authorize remand only for lack of jurisdiction or improper removal procedure.[66] In so holding, the Court noted that removal of cases from state courts has been allowed since the first Judiciary Act, "and the right to remove has never been dependent on the state of the federal court's docket."[67] That clearly implies the Court recognized

---

[65] *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 344-45 (1976), overruled on other grounds by *Quackenbush Allstate Ins. Co.*, 517 U.S. 706 (1996).

[66] *Thermtron Prods.*, 423 U.S. at 345.

[67] *Id.* at 344.

a "right to remove," and a concomitant "right" not to have a properly removed case remanded on "equitable grounds."[68]

It would yield an absurd result to conclude that in adopting § 1452(b) Congress intended to deprive parties of their rights that have been recognized since the first Judiciary Act – to have their case heard by a federal District Court when diversity jurisdiction exists – simply because bankruptcy jurisdiction also exists and was cited as alternative ground for removal.

At least one bankruptcy court concluded that it could remand on equitable grounds while ignoring the assumed existence of diversity jurisdiction, which was heavily contested.[69] That decision to ignore the existence of assumed diversity jurisdiction, however, was not reasoned and did not consider the implications of *Thermtron*. Plaintiff's other authorities are either *dictum*, because the actual holding was mandatory abstention,[70] or are simply not on point and miscited, because no other basis for federal jurisdiction was found to exist.[71]

Based on the plain language of the applicable statute and the analysis and holding of *Thermtron*, the Court must conclude that it lacks discretion to remand "on any equitable ground" when either federal question or diversity jurisdiction exists.

Because the Court concludes that it lacks discretion to remand on any equitable grounds, the Court will not decide whether such a remand would be appropriate in the event an appellate court decides such discretion does exist. However, to the extent it may assist the parties or an appellate court, the Court will provide some preliminary thoughts on the issue.

---

[68] *Accord, Hutton v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 181307, *1 (W.D. Pa. Jan. 13, 2011) ("Defendant has a legal right under the removal statute to proceed in this forum, and the Court has a legal duty to exercise its jurisdiction to preside over this case," citing Thermtron Prods., 423 U.S. 336; and *Feidt v. Owens Corning Fiberglass Corp.*, 153 F.3d 124, 128-29 (3d Cir. 1998); "I cannot deprive them of a federal forum simply because remand to state court may promote judicial efficiency," quoting *Tucker v. Whitaker Travel, Ltd.,* 620 F. Supp. 578, 583 (E.D. Pa. 1985)).

[69] *Maya, LLC v. Cytodyn of N.M., Inc. (In re Cytodyn of N.M., Inc.)*, 374 B.R. 733, 740 (Bankr. C.D. Cal. 2007).

[70] *Davis v. Life Investors Ins. Co. of Am.*, 282 B.R. 186, 194 (S.D. Miss. 2002).

[71] *Vig v. Indianapolis Life Ins. Co.*, 336 B.R. 279, 286 (S.D. Miss. 2005) ("As this court has rejected defendants' argument that ERISA provides a basis for federal jurisdiction, it follows that § 1334 is the sole jurisdictional basis for this case").

17

Most of the equitable remand factors are so closely balanced that they are not determinative. It appears there will be cases pending in both state and federal courts regardless of whether this case is remanded or not, so the avoidance of potentially inconsistent results is not a factor that weights heavily one way or the other. Comity is not a particularly strong factor because the case was removed at the outset before state court had spent any time on it, and the issues are not uniquely matters of state concern.

Clearly the strongest factor in support of remand is the fact that state law issues predominate and there are apparently no bankruptcy issues nor anything for which a bankruptcy court's expertise or experience in this bankruptcy case would be useful or enhance judicial economy. These are the primary factors on which this court relied in remanding similar cases brought by non-debtor parties.

On the other hand, the fact that this is an action brought by a liquidating trust that is a successor to the debtor in possession weighs strongly in favor or retaining jurisdiction in bankruptcy court. The use of a liquidating trust to liquidate, and distribute to creditors, the proceeds of debtor causes of action and debtor in possession avoidance actions is a highly efficient way to get complex cases confirmed relatively quickly. And, in general, debtors in possession regard it as much more efficient to litigate their claims and avoidance actions in the bankruptcy court. Indeed, it was precisely because this view was so widely shared that Congress made the dramatic change to bankruptcy jurisdiction that it did when it adopted the Bankruptcy Code in 1978, to grant bankruptcy court jurisdiction over what were previously regarded as "plenary causes of action" that had to brought elsewhere.

It would be detrimental to both of those efficiencies if the bankruptcy court were to routinely abstain from hearing such litigation when brought postconfirmation by a liquidating trust. If this Court were to remand this case on equitable grounds, then to avoid that threat of the loss of bankruptcy court jurisdiction, more debtors in possession might be inclined to litigate such actions in bankruptcy court prior to confirming a plan. This would result in confirmation being substantially delayed beyond what could be accomplished through the use of a liquidating trust and post-confirmation litigation. Although in this case this particular liquidating trust

18

prefers to pursue this claim in state court, the judicial efficiency that can be preserved through the retention of bankruptcy court jurisdiction for liquidating trust litigation is a factor that weighs strongly against either abstention or remand.

**Conclusion**

Because diversity jurisdiction exists, bankruptcy jurisdiction exists, and equitable remand is not available when diversity jurisdiction exists, the motion to remand must be denied.

DATED AND SIGNED ABOVE